IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DOUGLAS S. MARSHALL,

Plaintiff

v.

JOHN E. POTTER, Postmaster
General, UNITED STATES POSTAL
SERVICES, UNITED STATES OF
AMERICA,

Defendants

CIVIL 07-1625 (JAG)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on defendant's motion for summary judgment filed on February 13, 2009.  (Docket No. 45.)  Plaintiff, Douglas S. Marshall, opposed the same on March 30, 2009.  (Docket No. 50.)  Defendant filed a reply brief on April 3, 2009.  (Docket No. 54.)  Plaintiff then filed a surreply to defendant's argument on April 17, 2009.  (Docket No. 55.)  The matter was referred to me for report and recommendation on  April 29, 2009.  (Docket No. 56.)  Having considered the arguments of the parties, the evidence presented, and for the reasons set forth below, I recommend that defendant's motion be GRANTED.

CIVIL 07-1625 (JAG)                    2

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff worked at a post office in Detroit, Michigan, and on May 30, 1995, he suffered a left knee injury while he was working as a part-time letter carrier. As a result of his injury, he underwent surgery on October 30, 1998.   In November 1998, he returned to limited duty as a modified city carrier technician. From March 5, 1999, to July 24, 1999, the plaintiff received workman's compensation.     After his physician determined his maximum medical improvement, on June 28, 2000,  plaintiff accepted the offer of a modified job as a City Carrier Technician at a postal station in Detroit.

The modified position had a 9:30 a.m. to 6:30 p.m work schedule and duties within the physical restrictions placed upon plaintiff by his physician. (Docket No. 46, at 1, ¶¶ 1-3.)   On August 8, 2000, the Office of Workers Compensation Program ("OWCP") found that plaintiff's actual earnings as a modified city carrier technician (of eight hours a day) reasonably represented his wage-earning capacity.  (Docket No. 34, at 2, ¶ 4.)  On May 19, 2003, plaintiff was awarded a 7% left knee permanent disability.  (Docket No. 46-3.)

Through "eReassign," a web-based application program for voluntary geographical relocation used by career bargaining unit employees of the United States Postal Service ("USPS") and arguably a form of reasonable accommodation, plaintiff voluntarily applied to be transferred from Detroit to an office in

CIVIL 07-1625 (JAG)                    3

Guayanilla, Puerto Rico.  His request for the transfer was accepted and he became a part-time Flexible City Carrier in Guayanilla, Puerto Rico, as requested, effective on November 27, 2004.  (Docket No. 34, at 2, ¶ 5.)

Once in Puerto Rico plaintiff continued to be paid for forty hours a week despite actually working only about ten hours a week at the Guayanilla office.  (Id. at 2, ¶¶ 4-5.)  Plaintiff complained in writing to the human resources department that his skills were not being utilized adequately and he wanted more responsibilities.  (Docket No. 46 -7, at 2.)  It was after this complaint that in August of 2005, the Human Resources Office realized that an error occurred in calculating the hours the plaintiff was entitled to be paid in the Puerto Rico office.

According USPS policy, when a full-time employee transfers to a part-time position the employee loses the 40-hour work week guarantee.  (Docket No. 46-16, at 4.)  Consequently on August 30, 2005, the Human Resources Office notified plaintiff that his modified job offer which was available to him in the Detroit office was no longer valid in Puerto Rico.  On October 5, 2005, the USPS offered the defendant a modified job reflecting his new part-time position and work location in Puerto Rico which he accepted on October 7, 2005.  This job demanded a 36-hour work week.  The plaintiff accepted this offer. (Docket No. 46, at 2-3, ¶¶ 6-8.)

CIVIL 07-1625 (JAG)                     4

On October 6, 2005, plaintiff filed a claim for intermittent wage loss (Form CA-7) with the OWCP in an apparent attempt to make up the balance of forty-hour work week.   Plaintiff claimed that the OWCP should compensate him for the difference in hours since he was only working 36 hours and not 40 hours.  Plaintiff believes he deserves these benefits as a result of his knee injury.  (Docket No. 46-12.)

On December 1, 2005, the OWCP denied the plaintiff's claim because they determined the wage loss he suffered was a result of his voluntary transfer to Puerto Rico and his change of status to part time employment and not related to his knee injury.  (Docket No. 46-14, at 2, ¶ 4.)

On April 5, 2006, the OWCP reiterated the previous finding of August 8, 2000.  It was noted that plaintiff voluntarily changed jobs within the USPS and transferred to Puerto Rico, to a part-time flexible position with no guarantee of more than four hours of work per pay period.  (Docket No. 50-13.)  Based on the findings, it was also determined that there was no basis to award compensation for the claimed wage loss.

On November 23, 2005, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the USPS.  (Docket No. 46-11.)  Therein, plaintiff claimed discrimination based on race (African American)

CIVIL 07-1625 (JAG)                         5

and disability (left knee).  (Id.)  (Plaintiff has clarified that he is not alleging racial discrimination in this case.)  (Docket No. 50-2, at 3.)

On December 1, 2005, plaintiff received a letter from the  Department of Labor informing him that his case was closed and that his permanent job offer in Puerto Rico was not valid.  (Docket No. 46-13.)  After the investigative phase plaintiff requested a hearing before the EEOC.  The agency then moved for summary judgment which was granted on February 5, 2007.

Administrative Law Judge Ana V. González of the EEOC issued a final decision finding no discrimination when the Department of Labor closed plaintiff's case under the OWCP and determined that plaintiff's permanent job (40 hours a week) was not valid in Puerto Rico because plaintiff had voluntarily applied to a part-time position on the island, which position was given to him by the USPS. The judge found that  plaintiff was unaware of the effect his voluntary transfer would have on his work-related disability, and that no evidence existed that he was misled or that other employees were treated differently.  (Docket No. 46-16, at 7, ¶ 4.)

Thus, in light of the EEOC's decision the USPS issued its Notice of Final Action on February 13, 2007.  (Docket No. 46-16.)  On March 13, 2007, plaintiff appealed to the EEOC's Office of Federal Operations ("OFO"), and on June 29, 2007, it affirmed the agency's final decision.   (Docket No. 46-17.)   In the

CIVIL 07-1625 (JAG)                    6

statement of appeal, plaintiff contended that the agency obstructed his OWCP

claim, and is required to provide him work for eight hours a day.  (Docket No. 46-

17, at 2, ¶ 5.)   As relevant, the decision refers to plaintiff's allegations of

discrimination based upon his left knee disability.  The OFO concluded that once

plaintiff transferred from a full-time position in a Detroit facility to a part-time

position in a Puerto Rico facility, his position had to be re-evaluated, and the

OWCP found that his wage loss was a result of his voluntary transfer.  The OFO

also noted that challenges to actions which occur during the OWCP process are

made in that process itself.  (Docket No. 46-17, at 3-4, ¶ 4.)

On July 13, 2007, plaintiff pro se filed the original complaint against the

USPS for violation of the Rehabilitation Act of 1973, The Americans with

Disabilities Act of 1990, Title I and Title V, The Federal Employees Compensation

Act (FECA) and the NALC Collective Bargaining agreements.  (Docket No. 2.)

Plaintiff subsequently obtained counsel, filed an amended complaint and a second

amended complaint.  (Docket Nos. 31, 34.)

Plaintiff filed a second amended complaint on June 6, 2008, invoking this

court's federal question jurisdiction under 1) the Federal Employees Compensation

Act of 1990, 5 U.S.C. § 1801 *et seq*.; 2) the Rehabilitation Act of 1973, 29 U.S.C.

§ 706 *et seq*.; and 3) Title I and Title V of the American With Disabilities Act of

1990, 42 U.S.C. §  12111 *et seq*., the provisions of sections 501 and 510, 42

CIVIL 07-1625 (JAG)                          7

U.S.C. § 12201-12204 *et seq*., and again § 12201 *et seq*. as such relate to employment.  (Docket No. 34).

On February 13, 2009, defendant filed a motion for summary judgment along with a statement of uncontested fact and memorandum of law pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.  (Docket Nos. 45-47.)  Therein, defendant states the court lacks jurisdiction and that there are no genuine issues as to any material facts, and that it is entitled to judgment as a matter of law.  Also, defendant claims that the plaintiff's complaint is an improper collateral attack on the Department of Labor's decision denying his claim for intermittent wage loss.  (Docket No. 47, at 7, ¶ 2.)

Plaintiff ripostes that his complaint is not a collateral attack to the Department of Labor's determination regarding a claim for intermittent wages but rather a claim based on the defendant's continuous failure and refusal to accommodate plaintiff's work in a manner consistent with the Department of Labor's OWCP LWEC (lost wage earning capacity) determination of August 8, 2000, and its own mandated policies.  (Docket No. 50-18, at 3.)  Plaintiff stresses that he has never requested a modification of the OWCP LWEC determination.  (Docket No. 50-18, at 4, ¶ 1.)

Defendant alleges that plaintiff had a fulltime position in Detroit but that he voluntarily chose to relocate to Puerto Rico where the USPS did not guarantee a

CIVIL 07-1625 (JAG)                    8

40 hour work week because his position was part-time.  (Docket No. 46-5, at 4,

¶ 12; Docket No. 46-6.)  Plaintiff asserts that he was never a fulltime employee

in Detroit.  He contends that prior to his knee injury his job title was part time

letter carrier and that after his injury it was changed to modified city carrier

technician.  (Docket No. 50-18, at 3, ¶ 2.)  However, plaintiff claims that a part

time employee has the opportunity to earn 40 hours a week like he was earning.

Plaintiff demands that even though he is a part time employee he must be given

the opportunity to work 40 hours.  (Docket No. 50-4.)

Furthermore, defendant affirms that a modified job offer is only valid in the

office in which it was offered because it is based on the availability of the work

that is parallel to the employee's medical limitation at that location.  (Docket No.

46-5, at 4; Docket No. 46-9, at 4.)  Plaintiff believes he was misled.  He contends

that because he is permanently disabled he cannot fully receive the benefits of the

reassignment program.  (Docket No. 50-2, at 7, ¶ 2.)

Defendant alleges plaintiff has refused to provide updated medical

information regarding his injury; consequently the modified job that was offered

to plaintiff was based on the medical records provided by his physician on

October 21, 2002.  (Docket No. 46-11, at 20-21; Docket No. 46-5, at 2-3 and

Docket No. 46-9, at Question 13.)  Plaintiff however disagrees with the defendant

CIVIL 07-1625 (JAG)                    9

on this matter.  Plaintiff affirms that he provided the updated medical information that defendant had requested.  (Docket No. 50-9.)

Having considered the arguments of the parties, and the evidence in the record, I recommend that the defendant's motion for summary judgment be granted and that the case be dismissed in its entirety.

## II.  STANDARD OF REVIEW

### A.  SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor.  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st

CIVIL 07-1625 (JAG)                    10

Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).   A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in a light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor.   See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002).  A fact is considered material if it has the potential to affect the outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).   The court must determine whether either party is entitled to judgment as a matter of law on facts that are not disputed.  Adria Int'l Group, Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

## B.  LOCAL RULE 56

In the District Court of Puerto Rico, Local Rule 56(b), previously Local Rule 311(12), requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute.  These

CIVIL 07-1625 (JAG)                    11

facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material facts establishing that there is a genuine issue in dispute.  Local Rules of the United States District Court for the District of Puerto Rico, Local Rule 56(e) (2004); Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001).

Additionally, the facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see also Carmona Ríos v. Aramark Corp., 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001); Velázquez Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000).  Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party.  Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33; see Ríos-Jiménez v. Principi, 520 F.3d 31, 38-39 (1st Cir. 2008);  Guzmán-Rosario v. United Parcel Serv., Inc., 397 F.3d 6, 9 (1st Cir. 2005).

Defendant submitted it's statement of uncontested material facts on February 13, 2009.  (Docket No. 46.)  Accordingly, plaintiff submitted a statement

CIVIL 07-1625 (JAG)                    12

of material facts as to which he alleges there is dispute.  (Docket No. 50, dated

March 30, 2009.)  Parties have thus complied with our local anti-ferret rule.

III.  <u>DISCUSSION</u>

A.  FEDERAL EMPLOYEES COMPENSATION ACT ("FECA")

Plaintiff invokes the court's jurisdiction under the Federal Employees

Compensation Act of 1990, 5 U.S.C. §§ 8101-8193.  FECA establishes a federal

workers' compensation program for employees who suffer a "disability" as a result

of an on-the-job injury.  <u>Rolland v. Potter</u>, 492 F.3d 45, 48 (1st Cir. 2007).  The

Secretary of Labor has "delegated responsibility for administering FECA to the

Director of the OWCP."  <u>Noble v. United States</u>, 216 F.3d 1229, 1234 (11th Cir.

2000).  Defendant claims that FECA is structured to provide the exclusive remedy

against claims against the federal government for employment related injuries

sustained by federal employees.

> FECA's exclusive liability provision ... was designed to
> protect the Government from suits under statutes, such
> as the Federal Tort Claims Act, that had been enacted to
> waive the Government's sovereign immunity.  In enacting
> this provision, Congress adopted the principal
> compromise-the "quid pro quo"-commonly found in
> workers' compensation legislation: employees are
> guaranteed the right to receive immediate, fixed benefits,
> regardless of fault and without need for litigation, but in
> return they lose the right to sue the Government.

<u>Gill v. United States</u>, 471 F.3d 204, 206 (1st Cir. 2006) (quoting <u>Lockheed Aircraft</u>

<u>Corp. v. United States</u>, 460 U.S. 190, 193-94 (1983)).

CIVIL 07-1625 (JAG)                    13

Defendant further argues that once the OWCP determines that an injury falls within the scope of FECA's converge, all other claims are preempted and the claimant is limited to the FECA authorized remedies.  Thus, the defendant argues that this court does not have jurisdiction to entertain any review of the Secretary's decision and that plaintiff is attempting to lodge a collateral attack on the OWCP's decision under the FECA.  Indeed, FECA dictates that OWCP determinations of law and fact regarding compensation for federal disability status are not reviewable. 5 U.S.C. § 8128(b); Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 780 (1985); see Czerkies v. United States Dep't of Labor, 73 F.3d 1435, 1437-42 (7th Cir. 1996).  Even uncertain questions of coverage under FECA are left to the Secretary of Labor.  See, e.g., Gill v. United States, 471 F.3d at 208; cf. Stone v. Chao, 284 F. Supp. 2d 241, 245-46 (D. Mass. 2003).

B.  TITLE I AND TITLE V OF THE AMERICAN WITH DISABILITIES ACT ("ADA")

Plaintiff invokes the court's jurisdiction under Title I and Title V of the American With Disabilities Act of 1990, 42 U.S.C. §  12111 *et seq.*, the provisions of sections 501 and 510, 42 U.S.C. § 12201-12204 *et seq.*, and § 12201 *et seq.*, as such relate to employment.  (Docket No. 34.)

Plaintiff alleges that he has the ability to work more than 36 hours and contends that type of work is available at his duty station and can be made available to him.  The plaintiff asserts that he is medically capable of performing

CIVIL 07-1625 (JAG)                    14

these duties but he is not afforded the opportunity to do it.  Plaintiff alleges that the defendant is using his physical disability as a reason for not assigning him the work which is regularly assigned to other employees, and that he is being denied an employment opportunity because he is disabled and the defendant refuses to make reasonable  accommodations.

Title 42 U.S.C. § 12111(9)(B) states that reasonable accommodation may include :

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).

An organization may not deny an opportunity to an employee who is capable of performing the required duties if the reason for the employee not getting the opportunity is because the organization has to make reasonable accommodations. The ADA 42 U.S.C. § 12112 states that the term discriminate includes:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

CIVIL 07-1625 (JAG)                    15

> denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant[.]

42 U.S.C.A. § 12112(b)(5)(A)(B).

"The ADA and Rehabilitation Act prohibit discrimination against an otherwise qualified individual based on his or her disability." Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). Nevertheless, such allegations in this case are not actionable under the ADA. Recourse for disability-based discrimination as a federal employee is only available under the Rehabilitation Act. See Enica v. Principi, 544 F.3d 328, 338 n.11 (1st Cir. 2008); Feliciano-Hill v. Principi, 439 F.3d 18, 22 n.1 (1st Cir. 2006); Peltier v. United States, 388 F.3d 984, 989 (6th Cir. 2004); Calero-Cerezo v. United States Dep't of Justice, 355 F.3d at 20.

In any event, the ADA does not provide for suits against the federal government. See Ríos-Jiménez v. Principi, 520 F.3d at 37. Plaintiff notes that section 791(g) of the Rehabilitation Act, 29 U.S.C. § 791(g), clearly states that the standards to determine whether the section has been violated in a complaint alleging non-affirmative action employment discrimination is the standard applied under Title I of the ADA and the provisions of sections 501 through 504, and 510

CIVIL 07-1625 (JAG)                     16

of the ADA, 42 U.S.C. §§ 12201-12204 and 12210, as such sections relate to employment.  (Docket No. 50-18, at 7.)

Nevertheless, the court has no jurisdiction as to the ADA cause of action. Therefore, I recommend that the cause of action brought under the ADA be denied for lack of subject matter jurisdiction.

C.  THE REHABILITATION ACT OF 1973

Plaintiff invokes the court's jurisdiction under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-795.  The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(2) of this title, shall solely by reason of her or his disability . . . be subjected to discrimination under any program or activity . . . conducted by . . . the United States Postal Service."  29 U.S.C. § 794(a).  Section 705(20) defines an "individual with a disability" as "any person who . . . has a physical or mental impairment . . . . "  Rolland v. Potter, 492 F.3d at 47.

In order to assert a claim for failure to accommodate under the Rehabilitation Act, plaintiff must establish that he (1) suffers from a "disability" within the meaning of the statute, (2) is a qualified individual inasmuch as he is able to perform the essential functions of his job, with or without reasonable accommodation, and (3) that, despite its knowledge of his disability, the USPS did not offer a reasonable accommodation.  Enica v. Principi, 544 F.3d at 338.

CIVIL 07-1625 (JAG)                    17

It is uncontested plaintiff suffers from a "disability" within the meaning of the statute, and that he is a qualified individual inasmuch as he is able to perform the essential functions of his job, with or without reasonable accommodation. However, it has not been established that despite its knowledge of his disability, the USPS did not offer plaintiff a reasonable accommodation.   There is no evidence which leads to an inference of discrimination based upon disability.  I explain.

In evaluating whether plaintiff has put forth a *prima facie* disability discrimination claim under the Rehabilitation Act, in the absence of direct evidence of discrimination, I apply the well known burden-shifting framework of McDonnell Douglas v. Green, 411 U.S. 792, 902 (1973); see Ríos-Jiménez v. Principi, 520 F.3d at 40-41; Griel v. Franklin Med. Ctr., 71 F. Supp. 2d 1, 6-7 (D. Mass. 1999).

Put in other terms, plaintiff must prove by a preponderance  of the evidence that:  (1) he was disabled within the meaning of the statute; (2) he was qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (3) the employer took adverse action against him because of the disability.  Ríos-Jiménez v. Principi, 520 F.3d at 41; González-Rodríguez v. Potter, 605 F. Supp. 2d 349, 363 (D.P.R. 2009); Dávila v. Potter, 550 F. Supp. 2d 234, 242 (D.P.R. 2007).

CIVIL 07-1625 (JAG)                    18

On this well-developed record, it is not possible to find that the USPS took adverse action against plaintiff because of his disability.  Plaintiff transferred voluntarily to Puerto Rico and obtained a part-time position which did not guarantee him the hours he wished.  For all the hinting at skullduggery on the part of the USPS, plaintiff has not shown that his work schedule is anything other than the result of the reasonable application of USPS regulations.

In terms of the offering of a reasonable accommodation, examples of the same may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position" (42 U.S.C. § 12111(9)(B)), but it is difficult to envision an increase to or guarantee of a 40-hour work week for a part-time position as a reasonable accommodation which considers the limitations of a disability.

 A reduction or amelioration of work conditions is more in keeping with the concept of accommodation, rather than an increase in work hours.  Here, a part-timer wants to be assigned fulltime work. That is hardly a reasonable accommodation to the known limitation.  Cf. Tardie v. Rehab. Hosp. of R.I., 168 F.3d 538, 544 (1st Cir. 1999).

Plaintiff is required to perform the essential functions of his position, while being substantially limited and reasonably functional.  See Calero-Cerezo v. United States Dep't of Justice, 355 F.3d at 22-23.   Even the idea of his being

CIVIL 07-1625 (JAG)                    19

substantially limited may be questioned under the circumstances.  Cf. Prescott v. Higgins, 538 F.3d 32, 44 (1st Cir. 2008); Rolland v. Potter, 492 F.3d at 49.

Furthermore, the fact plaintiff may have been granted compensation at one time and has a disability under the FECA does not mean automatically that he is disabled under the Rehabilitation Act.  See Rolland v. Potter, 492 F.3d at 49; Andreoli v. Gates, 482 F.3d 641, 651 (3d Cir. 2007).

Nevertheless, if a complainant establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its challenged action.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).  Once that occurs, then the complainant must establish that the stated reason for the action is untrue or a pretext for discrimination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993); Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998).

Even assuming plaintiff has established a *prima facie* case of discrimination, a generous assumption, he has not complied with his burden of rebutting the defendant's articulated reason for assigning him to less than a 40-hour week, notwithstanding plaintiff's position that the USPS did not articulate a legitimate reason as to why plaintiff has not been afforded the opportunity for a reasonable accommodation since his transfer to Puerto Rico.

CIVIL 07-1625 (JAG)                    20

Indeed, he notes that it is not until November 28, 2008, that the USPS for the first time provided him with a Notice of No Work Available, and alleges that this fact ignores the input provided by him during the Rehabilitation Modified Position Meeting held on November 3, 2008, which resulted in the Notice of No Work Available. A decision to place plaintiff in a leave-without-pay status was to take place as of December 29, 2008. No such placement has been made. At least as of March 30, 2009, plaintiff was on leave receiving pay for 36 hours a week. (Docket No. 50-18, at 9-10).

Notwithstanding this proffer, the uncontroverted, consistently articulated, legitimate, non-discriminatory reason for the USPS' challenged action has not been shown to be untrue or a pretext for disability-based discrimination. To paraphrase the defendant's argument, the record clearly does not support any inference of discrimination based upon plaintiff's knee disability.

IV. <u>CONCLUSION</u>

The ultimate burden of proving unlawful action rests at all times with plaintiff. <u>Ríos-Jiménez v. Principi</u>, 520 F.3d at 41 (citing <u>Reeves v. Sanerson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000)). It is clear that plaintiff's wage loss cannot be attributed to his left knee disability but rather is attributable to the results of his voluntary transfer from Detroit, Michigan to Guayanilla, Puerto Rico. Plaintiff has not sought accommodation based upon his injury but rather based on

CIVIL 07-1625 (JAG)                    21

his wish to work more hours instead of fewer.  Plaintiff has thus failed in his burden of proving that any action or inaction of the USPS was based on his permanent partial disability.  See, e.g., Méndez v. West, 177 F. Supp. 2d 121, 128 (D.P.R. 2001).

In short, plaintiff has no cause of action under the American With Disabilities Act.  Plaintiff also has no cause of action under the Federal Employees Compensation Act.  As to the cause of action brought under the Rehabilitation Act, the defendant has shown that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law.  I therefore recommend that the motion for summary judgment be granted and that this action be dismissed.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14

CIVIL 07-1625 (JAG)                    22


(1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982);

Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

    At San Juan, Puerto Rico, this 3d day of September, 2009.

                                      S/ JUSTO ARENAS
                      Chief United States Magistrate Judge