IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DOUGLAS S. MARSHALL,<br><br>**Plaintiff**<br><br>v.<br><br>JOHN E. POTTER, <u>et al.,</u><br><br>**Defendant** | CIVIL NO. 07-1625(JAG) |

**OPINION AND ORDER**

Pending before the Court is Defendant John E. Potter, Postmaster General, the United States Postal Service ("USPS"), and the United States of America's (hereinafter "Defendant"), Motion for Summary Judgment ("Motion"). (Docket No. 45). Chief Magistrate Judge Arenas issued a Report and Recommendation and recommended that the Court grant Defendant's Motion and that Plaintiff Douglas S. Marshall's (hereinafter "Plaintiff") claims be dismissed. (Docket No. 61). Upon <u>de novo</u> review, the Court hereby **ADOPTS** the Magistrate Judge's Recommendation, and **GRANTS** Defendant's Motion for Summary Judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff worked at a post office in Detroit, Michigan, and on May 30, 1995, he suffered a left knee injury while he was working

---

[1] Taken in part from the Magistrate Judge's Report and Recommendation. (Docket No. 61).

Civil 07-1625 (JAG)                                                 2

as a part-time letter carrier.  As a result of his injury, he underwent surgery on October 30, 1998.  In November 1998, he returned to limited duty as a modified city carrier technician. From March 5, 1999, to July 24, 1999, Plaintiff received workman's compensation.  After his physician determined his maximum medical improvement, on June 28, 2000, Plaintiff accepted the offer of a modified job as a City Carrier Technician at a postal station in Detroit.

The modified position had a 9:30 a.m. to 6:30 p.m. work schedule and duties within the physical restrictions placed upon Plaintiff by his physician.  (Docket No. 46, at 1, ¶¶ 1-3.)  On August 8, 2000, the Office of Workers Compensation Program ("OWCP") found that Plaintiff's actual earnings as a modified city carrier technician (of eight hours a day) reasonably represented his wage-earning capacity. (Docket No. 34, at 2, ¶ 4.)  On May 19, 2003, Plaintiff was awarded a 7% left knee permanent disability. (Docket No. 46-3.)  Through "eReassign" a web-based application program for voluntary geographical relocation used by career bargaining unit employees of the USPS, Plaintiff voluntarily applied to be transferred from Detroit to an office in Guayanilla, Puerto Rico.  His request for the transfer was accepted and he became a part-time Flexible City Carrier in Guayanilla, Puerto Rico, as requested, effective on November 27, 2004.  (Docket No. 34, at 2, ¶ 5.)

Civil 07-1625 (JAG)                                                    3

Once in Puerto Rico Plaintiff continued to be paid for forty
hours a week despite actually working only about ten hours a week
at the Guayanilla office. (Id. at 2, ¶¶ 4-5.) Plaintiff complained
in writing to the human resources department that his skills were
not being utilized adequately and he wanted more responsibilities.
(Docket No. 46 -7, at 2.)  It was after this complaint that in
August of 2005, the Human Resources Office realized that an error
occurred in calculating the hours Plaintiff was entitled to be paid
in the Puerto Rico office.

According USPS policy, when a full-time employee transfers to
a part-time position the employee loses the 40-hour work week
guarantee.  (Docket No. 46-16, at 4.) Consequently on August 30,
2005, the Human Resources Office notified Plaintiff that his
modified job offer which was available to him in the Detroit office
was no longer valid in Puerto Rico.  On October 5, 2005, the USPS
offered the Defendant a modified job reflecting his new part-time
position and work location in Puerto Rico which he accepted on
October 7, 2005.  This job demanded a 36 hour work week.  The
Plaintiff accepted this offer.  (Docket No. 46, at 2-3, ¶¶ 68.)

On October 6, 2005, Plaintiff filed a claim for intermittent
wage loss (Form CA-7) with the OWCP in an apparent attempt to make
up the balance of forty-hour work week.  Plaintiff claimed that the
OWCP should compensate him for the difference in hours since he was
only working 36 hours and not 40 hours. Plaintiff believes he

Civil 07-1625 (JAG)                                                    4

deserves these benefits as a result of his knee injury. (Docket No. 4612.)

On December 1, 2005, the OWCP's District Office denied Plaintiff's claim because it determined the wage loss he suffered was a result of his voluntary transfer to Puerto Rico and his change of status to part time employment and not related to his knee injury. (Docket No. 46-14, at 2, ¶ 4.)

On April 5, 2006, the OWCP reiterated the previous finding of August 8, 2000. It was noted that Plaintiff voluntarily changed jobs within the USPS and transferred to Puerto Rico, to a part-time flexible position with no guarantee of more than four hours of work per pay period. (Docket No. 50-13.) Based on the findings, it was also determined that there was no basis to award compensation for the claimed wage loss.

On November 23, 2005, the Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the USPS. (Docket No. 46-11.) Therein, Plaintiff claimed discrimination based on race (African American) and disability (left knee). (Id.) (Plaintiff has clarified that he is not alleging racial discrimination in this case.) (Docket No. 50-2, at 3.)

On December 1, 2005, Plaintiff received a letter from the Department of Labor informing him that his case was closed and that his permanent job offer in Puerto Rico was not valid. (Docket No. 46-13.) After the investigative phase Plaintiff requested a

Civil 07-1625 (JAG)                                             5

hearing before the EEOC.   The agency then moved for summary
judgment which was granted on February 5, 2007.

Administrative Law Judge Ana V. González of the EEOC issued a
final decision finding no discrimination when the Department of
Labor closed Plaintiff's case under the OWCP and determined that
Plaintiff's permanent job (40 hours a week) was not valid in Puerto
Rico because Plaintiff had voluntarily applied to a part-time
position on the island, which was given to him by the USPS.   The
judge found that Plaintiff was unaware of the effect his voluntary
transfer would have on his work-related disability, and that no
evidence existed that he was misled or that other employees were
treated differently. (Docket No. 46-16, at 7, ¶ 4.)

Thus, in light of the EEOC's decision the USPS issued its
Notice of Final Action on February 13, 2007.   (Docket No. 46-16.)
On March 13, 2007, Plaintiff appealed to the EEOC's Office of
Federal Operations ("OFO"), and on June 29, 2007, it affirmed the
agency's final decision.   (Docket No. 46-17.)   In the statement of
appeal, Plaintiff contended that the agency obstructed his OWCP
claim, and is required to provide him work for eight hours a day.
(Docket No. 4617, at 2, ¶ 5.) As relevant, the decision refers to
Plaintiff's allegations of discrimination based upon his left knee
disability.   The OFO concluded that once Plaintiff transferred from
a full-time position in a Detroit facility to a part-time position
in a Puerto Rico facility, his position had to be re-evaluated, and

Civil 07-1625 (JAG)                                                    6

the OWCP found that his wage loss was a result of his voluntary
transfer.   The OFO also noted that challenges to actions which
occur during the OWCP process are made in that process itself.
(Docket No. 46-17, at 3-4, ¶ 4.)

On July 13, 2007, Plaintiff pro se filed the original
complaint against the USPS for violation of the Rehabilitation Act
of 1973, Title I and Title V of the Americans with Disabilities
Act of 1990, the Federal Employees Compensation Act and the NALC
Collective Bargaining agreements.   (Docket No. 2.)   Plaintiff
subsequently obtained counsel, filed an amended complaint and a
second amended complaint.   (Docket Nos. 31, 34.)

Plaintiff filed a second amended complaint on June 6, 2008,
invoking this court's federal question jurisdiction under 1) the
Federal Employees Compensation Act of 1990 ("FECA"), 5 U.S.C. §
1801 et seq.; 2) the Rehabilitation Act of 1973 (the
"Rehabilitation Act"), 29 U.S.C. § 706 et seq.; and 3) Title I and
Title V of the American With Disabilities Act of 1990 (the "ADA"),
42 U.S.C. § 12111 et seq., the provisions of sections 501 and 510,
42 U.S.C. § 12201-12204 et seq., and again § 12201 et seq. as such
relate to employment.   (Docket No. 34).

On February 13, 2009, Defendant filed a motion for summary
judgment along with a statement of uncontested facts and memorandum
of law pursuant to Rule 56 of the Federal Rules of Civil Procedure
and Local Rule 56.   (Docket Nos. 45-47.)   Therein, Defendant states

that the court lacks jurisdiction and that there are no genuine issues as to any material facts, and that it is entitled to judgment as a matter of law.  Also, Defendant claims that Plaintiff's complaint is an improper collateral attack on the Department of Labor's decision denying his claim for intermittent wage loss.  (Docket No. 47, at 7, ¶ 2.)

Plaintiff ripostes that his complaint is not a collateral attack to the Department of Labor's determination regarding a claim for intermittent wages, but rather a claim based on the Defendant's continuous failure and refusal to accommodate Plaintiff's work in a manner consistent with the Department of Labor's OWCP LWEC (lost wage earning capacity) determination of August 8, 2000, and its own mandated policies. (Docket No. 50-18, at 3.) Plaintiff stresses that he has never requested a modification of the OWCP LWEC determination.  (Docket No. 50-18, at 4, ¶ 1.)

Defendant alleges that Plaintiff had a full time position in Detroit but that he voluntarily chose to relocate to Puerto Rico where the USPS did not guarantee a 40 hour work week because his position was part-time.  (Docket No. 46-5, at 4, ¶ 12; Docket No. 46-6.)  Plaintiff asserts that he was never a full time employee in Detroit.  He contends that prior to his knee injury his job title was part time letter carrier and that after his injury it was changed to modified city carrier technician.  (Docket No. 50-18, at 3, ¶ 2.)  However, Plaintiff claims that a part time employee has

Civil 07-1625 (JAG)                                             8

the opportunity to earn 40 hours a week like he was earning. Plaintiff demands that even though he is a part time employee he must be given the opportunity to work 40 hours. (Docket No. 50-4.) Furthermore, Defendant affirms that a modified job offer is only valid in the office in which it was offered because it is based on the availability of the work that is parallel to the employee's medical limitation at that location. (Docket No. 46-5, at 4; Docket No. 46-9, at 4.) Plaintiff believes he was misled. He contends that because he is permanently disabled he cannot fully receive the benefits of the reassignment program. (Docket No. 50-2, at 7, ¶ 2.)

Defendant alleges Plaintiff has refused to provide updated medical information regarding his injury; consequently the modified job that was offered to Plaintiff was based on the medical records provided by his physician on October 21, 2002. (Docket No. 46-11, at 20-21; Docket No. 46-5, at 2-3 and Docket No. 46-9, at Question 13.) Plaintiff however disagrees with the Defendant on this matter. Plaintiff affirms that he provided the updated medical information that Defendant had requested. (Docket No. 50-9.)

On September 3, 2009, Chief Magistrate Judge Justo Arenas issued a Report and Recommendation. (Docket No. 61). The Magistrate Judge recommends this Court grant Defendant's Motion for Summary Judgment and that the case be dismissed in its entirety.

On September 21, 2009, Plaintiff filed his objections to the

Civil 07-1625 (JAG)                                              9

Report and Recommendation. (Docket No. 64).  On September 22, 2009,

Defendants replied to the objections. (Docket No. 65).

**STANDARD OF REVIEW**

**I. Review of Magistrate Judge's Report and Recommendation**

        Pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)

and Local Rule 503, a district court may refer dispositive motions

to a United States magistrate judge for a report and

recommendation. See Alamo Rodriguez v. Pfizer Pharmaceuticals,

Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003). The adversely

affected party may "contest the [m]agistrate [j]udge's report and

recommendation by filing objections 'within ten days of being

served' with a copy of the order." United States v. Mercado Pagan,

286 F. Supp. 2d 231, 233 (D.P.R. 2003) (citing 28 U.S.C. §

636(b)(1)). If objections are timely filed, the district judge

shall "make a de novo determination of those portions of the report

or specified findings or recommendation to which [an] objection is

made." Rivera-De-Leon v. Maxon Eng'g Servs., 283 F. Supp. 2d 550,

555 (D.P.R. 2003). A district court can "accept, reject, or modify,

in whole or in part, the findings or recommendations made by the

magistrate." Alamo Rodriguez, 286 F. Supp. 2d at 146 (citing

Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985)).

However, if the affected party fails to timely file objections, the

district court can assume that they have agreed to the magistrate

judge's recommendation. Id.

## II. Motion for Summary Judgment

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (citing Fed. R. Civ. P. 56(c)). The issue is "genuine" if it can be resolved in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" if it has the potential to change the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "In prospecting for genuine issues of material fact, we resolve all conflicts and draw all reasonable inferences in the nonmovant's favor." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant, once a properly supported motion has been presented before this court, the opposing party has the burden of demonstrating, through submissions of evidentiary quality, that a trial-worthy issue exists that would warrant this court's denial of the motion for summary judgment. Anderson, 477 U.S. at 248; Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations

omitted). Moreover, on issues "where [the opposing] party bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor." <u>United States v. Union Bank for Sav. & Inv.(Jordan)</u>, 487 F.3d 8, 17 (1st Cir. 2007) (quoting <u>United States v. One Parcel of Real Prop.</u>, 960 F.2d 200, 204 (1st Cir. 1992)). Hence, summary judgment may be appropriate if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." <u>Forestier Fradera v. Municipality of Mayaguez</u>, 440 F.3d 17, 21 (1st Cir. 2006) (citing <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)). It is important to note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, or draw legitimate inferences from the facts as these are "jury functions, not those of a judge". <u>Anderson</u>, 477 U.S. at 255.

**ANALYSIS**

Plaintiff is seeking remedies under FECA, the Rehabilitation Act, and Title I and Title V of the ADA. Inasmuch as the ADA does not provide for suits against the federal government, see, <u>Feliciano Hill v. Principi</u>, 439 F.3d 18, 22 n.1 (1st Cir. 2006), the Court will dismiss with prejudice all claims under the ADA.

Moreover, the Magistrate Judge found in his Report and Recommendation that the Rehabilitation Act is the only available avenue through which Plaintiff could get recourse in this case.

Civil 07-1625 (JAG)                                                12

Nevertheless, the Magistrate Judge concludes that Plaintiff's
allegations do not satisfy the test established for claims under
the Rehabilitation Act.   We agree.

     In his objections it seems Plaintiff is trying to make a two-
fold argument: 1) that Defendant is in violation of FECA because it
is not complying with the Secretary of Labor/OWCP's findings; and
2) that Plaintiff has presented enough evidence to demonstrate that
Defendants discriminated against him based on his disability.

A. **Federal Employment Compensation Act**

     The Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§
8101-8193, "establishes a federal workers' compensation program for
employees who suffer a 'disability' as a result of an on-the-job
injury."   Rolland v. Potter, 492 F.3d 45, 47 (1st Cir. 2007).
Furthermore, "FECA requires federal agencies to place employees in
their former positions, or in equivalent positions, following
recovery from compensable injuries." Id. (citing 5 U.S.C. § 8151).
Liability under FECA is "exclusive and instead of all other
liability of the United States . . . to the employee, his legal
representative, spouse, dependents, next of kin, and any other
person otherwise entitled to recover damages." See Gill v. United
States, 471 F.3d at 206 (1st Cir. 2006)(citing 5 U.S.C. § 8116(c)).
The First Circuit goes on to explain that

          FECA's exclusive liability provision . . . was designed
          to protect the Government from suits under statutes, such
          as the Federal Tort Claims Act, that had been enacted to
          waive the Government's sovereign immunity. In enacting

> this provision, Congress adopted the principal compromise
> - the "quid pro quo" - commonly found in workers'
> compensation legislation: employees are guaranteed the
> right to receive immediate, fixed benefits, regardless of
> fault and without need for litigation, but in return they
> lose the right to sue the Government.

Id. (citing Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193-94 (1983).

Moreover, FECA states that "[t]he Secretary of Labor shall administer, and decide all questions arising under, [FECA]." 5 U.S.C. § 8145. Consequently, the Supreme Court has interpreted this section of FECA as an "'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determination of FECA coverage." Id., (citing Sw. Marine, Inc. v. Gizoni, 502 U.S. 81 (1991) (internal citations omitted). As the Magistrate Judge explained "the Secretary of Labor has 'delegated responsibility for administering FECA to the Director of the OWCP." Noble v. United States, 216 F.3d 1229, 1234 (11th Cir. 2000).

Consequently, we agree with the Magistrate Judge's Report and Recommendation that this Court has no jurisdiction to review OWCP's final decision regarding Plaintiff's coverage under FECA. All questions regarding compensation for federal disability are left to the Secretary of Labor/OWCP and not the courts. See Gill v. United States, 471 F.3d at 208. Therefore, this Court will not to entertain the issue of whether Defendant is in violation of FECA because the Secretary of Labor/OWCP has already made a final ruling

Civil 07-1625 (JAG)                                              14

on the issue and closed Plaintiff's case.[2]  Thus, we must dismiss

Plaintiffs claims under FECA.

B. **Rehabilitation Act of 1973**

    The Rehabilitation Act provides that "[n]o otherwise qualified

individual with a disability in the United States, as defined in

section 705(20) of this title, shall, solely by reason of her or

his disability, . . . be subjected to discrimination under any

program or activity . . . conducted by . . . the United States

Postal Service." 29 U.S.C. § 794(a). Rolland v. Potter, 492 F.3d

45, 47 (1st Cir. 2007).

    To   establish   a   claim   of   discrimination   under   the

Rehabilitation Act, Plaintiff must prove: (1) that he is disabled

within the meaning of the act; (2) that he was a qualified

individual, able to perform the essential functions of his job,

with or without reasonable accommodation; and (3) that the employer

took adverse action against him because of his disability. See,

Bailey v. Georgia Pacific Corp., 306 F.3d 1162, 1166 (1st Cir.

2002) (citations omitted).  In cases where the particular claim is

------

    [2] Plaintiff presents a letter in his objections, from the
Hearings and Review Office of the OWCP, as proof that his award
of a 40 hour work week still stands.  The letter dated February
15, 2006, vacated a previous decision of December 1, 2005, from
the OWCP, which denied Plaintiff the 40 hour work week because
his transfer to Puerto Rico had been voluntary.  Plaintiff, then
argues that Defendant has violated FECA because that letter
demonstrates that his award still stands.  Nevertheless,
Plaintiff does not take into consideration that subsequent to
that letter, on April 5, 2006, the OWCP reached a final decision,
which again stated that his wage loss was a result of his
voluntary change to a part-time position in Puerto Rico, and not
as a result of his knee injury.

Civil 07-1625 (JAG)                                                    15

failure to accommodate, the third prong of the test changes so that Plaintiff must prove that "despite [his] employer's knowledge of [his] disability, the employer did not offer a reasonable accommodation for the disability". Enica v. Principi, 2008 U.S. App. LEXIS 21186 at *22 (1st Cir. 2008)(citing Calero-Cerezo v. United States DOJ, 355 F.3d 6, 20 (1st Cir. 2004).

Plaintiff's ambiguous complaint states that Defendant "discriminates against [him] while denying him the reasonable accommodation." We interpret from said language that Plaintiff is claiming both discrimination due to his disability and failure to accommodate.

1) Discrimination based upon disability

As stated in the Report and Recommendation, and uncontested by the parties, "Plaintiff suffers from a 'disability' within the meaning of the statute, and he is a qualified individual inasmuch as he is able to perform the essential functions of his work." Consequently, the first two prongs have been met. Lastly, we ask whether Plaintiff has demonstrated that the USPS took adverse action against him because of his disability. This Court agrees with the Magistrate Judge's finding that even on this well developed record it is not possible to find that the USPS took adverse action against Plaintiff due to his disability. Plaintiff's wage loss was the result of his voluntary transfer from a modified job full-time position in Detroit to a part-time

Civil 07-1625 (JAG)                                              16

position in Puerto Rico.  In accordance with USPS regulations, when
a full time employee transfers to a part-time position he loses any
guaranteed hours of work he had prior to said transfer.    In
conclusion, Plaintiff has not shown that the change in his work
schedule was anything other the result of the proper application of
USPS regulations.

    2) <u>Failure to Accommodate</u>

    As established above, the first two prongs of the framework
for determining if Defendant failed to accommodate Plaintiff have
been met.  We must now ask whether despite his employer's knowledge
of his disability, the employer did not offer a reasonable
accommodation for the disability.

    The First Circuit has established a two step analysis in order
to determine whether a Plaintiff has been provided with appropriate
accommodation.  <u>Id.</u> (citing <u>Reed v. LePage Bakeries</u>, Inc., 244 F.3d
254 (1st Cir. 2001)).  First, the employee must show "not only that
the proposed accommodation would enable him to perform the
essential functions of his job, but also that, at least on the face
of things, it is feasible for the employer under the
circumstances." <u>Reed</u>, 244 F.3d at 259. Second, the employee must
prove that the request was sufficiently direct and specific so as
to put the employer on notice of the need for an accommodation. Id.
at 261; <u>see also</u>, Wynne v. Tufts Univ., 976 F.2d 791, 795 (1st Cir.
1992).

Civil 07-1625 (JAG)                                              17

    Plaintiff argues that he was not properly accommodated because
Defendant did not grant him the 40 hour work week that he had prior
to transferring to Puerto Rico.  In other words, a part timer wants
to be assigned full time work.  Reasonable accommodation may
include "job restructuring, part-time or modified work schedules,
or reassignment to a vacant position." 42 U.S.C. § 12111(9)(b).
Nevertheless, we agree with the Magistrate Judge that its difficult
to envision an increase to a 40 hour work week from a part time
position as reasonable accommodation. It is more in line with the
concept of accommodation to offer a reduction in hours per week,
rather than increasing them.  Thus, we find that Plaintiff has not
demonstrated that the USPS failed to properly accommodate him.
Consequently, we find that Plaintiff has not met its burden under
the Rehabilitation Act and thus we must dismiss his claims.

    In conclusion, we note that the "ultimate burden of proving
unlawful action rests at all times with plaintiff." Rios-Jimenez v.
Sec'y of Veterans Affairs, 520 F.3d 31, 36 (1st Cir. 2008).  Thus,
this Court finds that Plaintiff's wage loss was not the result of
his left knee disability, but rather his voluntary transfer from
Detroit to Puerto Rico. We agree with the Magistrate's reasoning
that "Plaintiff did not seek accommodation based upon his injury
but rather on his wish to work more hours instead of fewer."
(Docket No. 61, p. 21).  Consequently, Plaintiff has not proven
that the USPS action or inaction was based on his disability.

Civil 07-1625 (JAG)                                          18

Therefore, we must dismiss all of Plaintiff's claims under the Rehabilitation Act.

As established above, Plaintiff has no cause of action under the ADA or FECA. Finally, after examining his claim under the Rehabilitation Act we find that there is no genuine issue of material fact. Thus, we must dismiss all of Plaintiff's claims.

### CONCLUSION

For the reasons set forth above, this Court **ADOPTS** in its entirety the Magistrate Judge's Report and Recommendation and consequently **GRANTS** Defendant's Motion for Summary Judgment and dismisses Plaintiff's claims with prejudice.


IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September 2009.


S/Jay A. García-Gregory
JAY A. GARCIA-GREGORY
United States District Judge